IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICKEY LEE PEARCE,

Case No. 2:15-cv-01256-KI

Petitioner,

OPINION AND ORDER

v.

MARK NOOTH,

Respondent.

**KING, Judge.**

Petitioner, an inmate at Snake River Correctional Institution, brings this habeas corpus

proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, this Court denies

Petitioner's Habeas Corpus Petition (ECF No. 2).

## BACKGROUND

On October 28, 2009, a Grand Jury returned an Indictment charging Petitioner with two

counts of Sexual Abuse in the First Degree. Resp't Exs. (ECF No. 31), Ex. 102. The charges were

based on allegations by two young girls (FO, age 7, and MO, age 10) that Petitioner touched them

inappropriately when applying sunscreen to their bodies.

Prior to trial, the prosecutor filed a Notice of Intention to Rely on Child Hearsay as required by Oregon Evidence Code (OEC) 803(18a)(b).[1] Resp't Ex. 112. Defense counsel did not object to the Notice. Consequently, the girls' mother (Antoinette O'Keefe), an investigating officer (Deputy Sheriff John Williams), and a child abuse examiner (Julie Siepmann) were permitted to testify to out-of-court statements made by FO and MO concerning the sexual abuse.

O'Keefe testified that in July or August of 2009, her daughters disclosed the sexual abuse to her. Resp't Ex. 103 at 119-20. She testified that they told her that Petitioner filled two garbage cans with water for them to swim in, and rubbed sunscreen on their bodies. *Id.* at 117-18. According to O'Keefe, the girls told her that Petitioner rubbed the sunscreen on their "private parts" and they demonstrated how he touched them. *Id.* at 118-19, 125. O'Keefe did not immediately report the incident to police. O'Keefe testified that she reported the abuse to Deputy Williams three weeks later after her daughters repeated the same facts concerning the abuse. *Id.* at 121, 159; *see* Resp't Ex. 122.

On September 30, 2009, Deputy Williams was dispatched to O'Keefe's house in response to her complaint of sexual abuse. Resp't Ex. 103 at 159; Resp't Ex. 122. On that same day, he interviewed MO at school. Resp't Ex. 103 at 160; *see* Resp't Ex. 122. According to Williams, MO stated that she saw Petitioner apply sunscreen to her sister and saw his fingers come from FO's behind to her front. Resp't Ex. 103 at 162, 171-74. MO told him that Petitioner made FO remove her underwear when he applied the sunscreen and a second time when he spanked her. *Id.* at 173-74; *see* Resp't Ex. 122. Williams testified that MO told him Petitioner also touched her, but she didn't "specifically say where." Resp't Ex. 103 at 164; *see* Resp't Ex. 122.

---

[1] As discussed *infra*, OEC 803(18a)(b) permits the admission of hearsay statements concerning sexual abuse under limited circumstances.

2 - OPINION AND ORDER

On October 6, 2009, Siepmann, a child abuse interviewer with Juliette's House, interviewed FO and MO. Resp't Ex. 103 at 201. According to Siepmann, MO stated that her sister told her Petitioner touched her private parts and that she was not wearing underwear. *Id.* at 205-06. However, MO said that she did not see Petitioner touch FO. *Id.* Siepmann testified that during a physical examination, MO demonstrated how Petitioner touched her above her private area (but below her underwear waistband) and on her buttocks. *Id.* at 206-07. Siepmann testified that FO disclosed that Petitioner pulled down her underwear and put "lotion in her privates." *Id.* at 210-13. Siepmann testified that FO also stated that she saw Petitioner put lotion on MO underneath her panties. *Id.* at 212-13.

On October 20, 2009, Deputy Williams and Deputy Sheriff Curtis Pitt interviewed Petitioner. *Id.* at 185, 193; Resp't Ex. 122. Pitt testified that Petitioner admitted to applying sunscreen to the girls and that he "pulled their panties down and [put] it on their buttocks, and then up in between their legs, to where it was by their crotch area." Resp't Ex. 103 at 190-91, 196; *see* Resp't Ex. 122. According to Pitt, Petitioner stated it was possible he touched their vaginas. Resp't Ex. 103 at 191. Petitioner was placed under arrest. *Id.* at 193.

Both girls testified that Petitioner engaged in inappropriate touching. FO could not identify Petitioner in the courtroom, but testified that he put sunscreen on her arms, back, bottom, between her legs, and in her underwear. *Id.* at 42, 45-48. FO also testified that Petitioner took off her underwear and spanked her. *Id.* at 51. FO testified that she saw Petitioner put sunscreen on her sister's back and arms, but she put her head underwater so she wouldn't see anything else. *Id.* at 61-62, 68. FO testified that her sister told her Petitioner put sunscreen "in her underwear." *Id.* at 68. FO testified that she told her mother about the abuse about two weeks after the incident. *Id.* at 66.

3 - OPINION AND ORDER

MO refused to look at Petitioner in the courtroom. *Id.* at 106. MO testified that Petitioner put sunscreen on her "privates," her bottom, and below the waistband of her underwear. *Id.* at 83-85, 92-93. MO testified that she saw Petitioner put his hands down FO's panties and put sunscreen "inside her." *Id.* at 85-86, 91-92. MO testified that Petitioner told her to "clap her knees," and he made FO remove her underwear and spanked her. *Id.* at 87-88. MO testified that after lunch, Petitioner made them both pull down their panties, and he spanked them because they did not eat all their food. *Id.* at 89-90. MO first testified that they told their mother about the abuse "a middle time" after the incident, but on cross examination stated it was the next day. *Id.* at 90-91, 100-02.

Petitioner's defense focused on his involvement in the community and his church, his reputation for being truthful, and O'Keefe's delay in reporting the alleged abuse to police. Petitioner sought to prove that O'Keefe made a false report of sexual abuse to police in order to avoid repayment of a $1,800 loan from Petitioner. At trial, O'Keefe conceded that she owed Petitioner $1,800. Resp't Ex. 103 at 146. Petitioner testified that he called O'Keefe several times about the loan, and one of the calls was on the day O'Keefe reported the abuse to police. Resp't. Ex. 104 at 18-20, 43-44.

With regard to his application of sunscreen to FO and MO, Petitioner testified that the girls stripped down to their panties before playing in the water, and that he applied the sunscreen to their "arms, backs, and legs . . . [a]nd then [he] swiped their butt . . . ." *Id.* at 20, 60. He denied removing the girls' underwear or touching them in the front, explaining that he "just pulled the underwear . . . down a little bit, and . . . rubbed their butt." *Id.* at 21. Petitioner denied telling the investigating officers that he told FO and MO to pull down their panties, and clarified that he told the officers it was "highly unlikely" that he touched their vaginas. *Id.* at 55-56, 59-60. During closing arguments,

defense counsel questioned why a mother would delay reporting the abuse to police, and stressed that

everything was fine between Petitioner and O'Keefe until he sought repayment of the debt. *Id.* at

110-14.

The trial judge found Petitioner guilty of both charges and sentenced him to a 120-month

term of incarceration. Resp't Ex. 101 at 2-5. The judge explained his ruling as follows:

> .... [W]e've had at least questions raised as to Mrs. O'Keefe's credibility
> and motives she might have had here. I agree with [Prosecutor] Gaddis, I don't see
> that that has anything to do with this case, for a number of reasons.

> First, all she really testified to and could testify to is that the girls made a
> disclosure to her.... [S]o I suppose if she's a dishonest person maybe that disclosure
> didn't take place or maybe ... she's lying about what they disclosed.

> But the fact is, the girls made the same disclosure to Deputy Williams, and
> they made the same disclosure to the staff at Juliette's House, and they made the
> same disclosure here. Certainly some of the details change, as you would expect, and
> as they do in every case like this. But that tells me that there's absolutely no doubt
> about whether the disclosure was made to Ms. O'Keefe. It was.

> There's also some question about how long she delayed. . . . I think she told
> the officer three weeks. . . .

> The bottom line is, she has consistently said, and I do find that she delayed.
> That, I think, was unwise. . . . But the testimony was that after the disclosure, the
> children were never around Mr. Pearce.

> . . . .

> I don't think there's anything unusual or wrong to helping a child apply sun
> lotion. . . .

> But . . . first it doesn't even need to be applied in the genital and anal areas.
> And secondly, if it needed to be applied, certainly a seven-year-old is capable of
> making an application at least as effective as the one Mr. Pearce claims he made,
> which is to get a little on his hand and swipe it over their butts. . . . So his explanation
> as to what he was doing down there makes no sense whatsoever.

> . . . .

[FO] testified credibly, and also going back a year, reported to the Juliette House that the application of the suntan lotion included, at the very minimum, applying over the top of her vaginal area, and perhaps even a slight penetration of that.

. . . .

The facts are overwhelming with regard to [FO] that the incident occurred, and I do find beyond a reasonable doubt that they occurred for a sexual motive and defendant is guilty of that count.

The case regarding [MO] is a bit weaker because the touch wasn't quite as intimate. She described him coming down below where the panties -- top of the panties would normally be, but did not describe as close a contact as [FO] did.

. . . .

[I]f hers was the only case and if this was the only evidence, it would be a difficult case for me to decide because, again, the only issue is the intent and purpose of the contact. But given what clearly happened to [FO], the similar acts with regard to [MO], I am convinced beyond a reasonable doubt that the intent there was also sexual arousal or gratification, and that the State has proven beyond a reasonable doubt that the defendant is guilty of that count as well. So I'll enter findings of guilty in both counts.

Resp't Ex. 104 at 120-25.

Petitioner subsequently sought state post-conviction relief (PCR) on the basis that his trial counsel rendered ineffective assistance by, among other things, failing to (1) move *in limine* and object to the prosecutor's Notice of Intent to Introduce Hearsay on the basis that it lacked sufficient particularity; and (2) object to testimony by witnesses who vouched for the credibility of FO and MO. Resp't Exs. 107 at 12, 108 at 7-8. The PCR Court denied relief, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 153, 157, 158.

In the instant proceeding, Petitioner seeks federal habeas relief on the basis that trial counsel rendered constitutionally ineffective assistance when she failed to object to (1) the Notice of Intent to Rely on Child Hearsay; and (2) numerous instances of witness vouching. Habeas Pet. at 6.

Respondent moves the Court to deny habeas relief on the basis that the state PCR Court's rejection of Petitioner's claims is neither contrary to, nor an unreasonable application of clearly established federal law.

## STANDARDS

Pursuant to 28 U.S.C. § 2254(d), a petition for writ of habeas corpus filed by a state prisoner shall not be granted, with respect to any claim that was adjudicated on the merits in state court, unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) & (2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014). A state court unreasonably applies clearly established federal law, if its decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103; *Woodall*, 134 S.Ct. at 1702.

It is clearly established federal law that a claim of ineffective assistance of counsel requires a habeas petitioner to prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Strickland v. Washington*, 466 U.S. 668, 687-88 (1987). To prove deficiency of performance, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Taylor*, 529 U.S. at 390-91; *Strickland*, 466 U.S. at 688. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was

7 - OPINION AND ORDER

within the 'wide range' of reasonable professional assistance." *Richter*, 562 U.S. at 104, *citing Strickland*, 466 U.S. at 689. Every effort must be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. *Strickland*, 466 U.S. at 689.

An attorney possesses wide latitude to make tactical decisions during trial. *Strickland*, 466 U.S. at 689. An attorney's "strategic decisions made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 689-91; *see Gresser v. Franke*, 628 F. App'x 960, 962-63 (9th Cir. 2015) (concluding that defense counsel's failure to object to vouching testimony was strategic decision). "Once counsel reasonably selects a defense, it is not deficient performance to fail to pursue alternate defenses." *Elmore v. Sinclair*, 799 F.3d 1238, 1250 (9th Cir. 2015) (internal quotations omitted).

In order to prevail on a claim of ineffective assistance of counsel for failure to raise an objection, a habeas petitioner must demonstrate that trial counsel's failure fell below an objective standard of reasonableness and that, had the objection been made, there is a reasonable probability that the objection would have been sustained and the outcome of the trial would have been different. *Flournoy v. Small*, 681 F.3d 1000, 1005-06 (9th Cir. 2012); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079-80 (9th Cir. 2000); *Gresser*, 628 F. App'x at 962. Generally it is not constitutionally required that a defense attorney accurately predict developments in state law. *Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir.2004); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994); *but see Burdge v. Belleque*, 290 F. App'x 73, at *77-78 (9th Cir. 2008) (concluding that counsel was ineffective for failing to challenge application of ambiguous statute in light of case law from other states and secondary sources supporting challenge). Proof that defense counsel had "nothing to lose" in raising

8 - OPINION AND ORDER

an objection does not suffice to prove that counsel was ineffective. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009).

When a Petitioner's ineffective assistance of counsel claim involves an underlying state law issue, this Court defers to a state court's determination of state law. *Woods v. Sinclair*, 764 F.3d 1109, 1138-39 (9th Cir. 2014); *Romero v. Cal. Dep't of Corr. and Rehab.*, 405 F. App'x 208, 211 (9th Cir. 2010); *Lopez v. Campbell*, 408 F. App'x 13, 16 (9th Cir. 2010); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."). However, a federal habeas court must undertake its own analysis of state law if certain aspects of the embedded state law question have not been directly addressed either in the proceedings below or in any published Oregon opinions. *Himes v. Thompson*, 336 F.3d 848, 854 (9th Cir. 2003). "In analyzing [an] embedded state law question, [the court must] vigilantly search [for] an interpretation of the state law question which would avoid attributing constitutional error to the state court" but "stop short of adopting an implausible or strained interpretation." *Id.*

## DISCUSSION

## I. Failure to Object to the State's Notice of Intention to Rely on Child Hearsay

Petitioner contends that trial counsel rendered ineffective assistance of counsel when she failed to object to the State's Notice of Intention to Rely on Child Hearsay that was "facially deficient because it did not comply with the rule's particularity requirement." Pet'r's Br. in Supp. (ECF No. 38) at 11.[2] Petitioner complains that "[r]ather than specify the details of any of the

---

[2] This Court rejects Respondent's characterization of Petitioner's ineffective assistance claim as a state law evidentiary challenge that is not cognizable on federal habeas review. *See* Resp't Reply (ECF No. 46) at 2.

numerous hearsay statements that the two girls made to the four witnesses identified by the State, the notice instead informed the defense in general and vague terms that the statements it intended to offer were 'described in the previously provided discovery by the State, and the Juliette's House reports ordered by the defense.'" *Id.* at 12.

In response, Respondent argues that (1) "based on law in existence at the time, trial counsel could reasonably determine that a motion *in limine* objecting to the notice would have been unsuccessful;" (2) it was reasonable strategy not to object "given the fact that she had reviewed all of the relevant statements and understood what statements the state would seek to introduce"; and (3) Petitioner suffered no prejudice. Resp't Resp. at 9. Respondent concludes that the PCR Court's rejection of this claim is neither contrary to, nor an unreasonable application of clearly established federal law.

## A.    Relevant State Law

Oregon Evidence Code (OEC) 803(18a)(b) provides an exception to the general rule excluding hearsay for statements made concerning acts of abuse. The rule provides:

A statement made by a person concerning an act of [sexual] abuse . .. is not excluded [by the hearsay rule] if the declarant either testifies at the proceeding and is subject to cross-examination, or is unavailable as a witness but was chronologically or mentally under 12 years of age when the statement was made . . . . No statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement *and the particulars of the statement* no later than 15 days before trial, except for good cause shown. (Emphasis added).

In *State v. Chase*, 240 Or. App. 541 (2011), a case decided *after* Petitioner's criminal trial, the Oregon Court of Appeals addressed the sufficiency of a hearsay notice in which the state "notified defendant that it intended to offer hearsay statements contained in the discovery, but did

10 - OPINION AND ORDER

not identify specifically which statements it would offer." 240 Or. App. at 546. The Court held that although OEC 803(18a)(b) does not require that the state "set forth the statements verbatim, simply providing discovery and notice of an intention to offer at trial hearsay statements contained in its discovery is not sufficient." *Id.* The Court explained that "the rule's requirement that the proponent identify the particulars of the statement requires at a minimum that the state identify in its notice the substance of the statement sought to be introduced and also identify the witness or the means by which the statement would be introduced." *Id.* at 546-47.

Subsequently in *Hagberg v. Coursey*, 269 Or. App. 377 (2015), a state prisoner sought state post-conviction relief on the basis that his trial attorney failed to object to the state's hearsay notice despite the fact that the notice "failed to identify 'the particulars' of the statements that the state planned to introduce." 269 Or. App. at 381. Because the petitioner's trial took place in 2005, his ineffective assistance claim required the Court of Appeals to consider whether "based on the law as it existed at the time of his trial, any reasonably competent defense attorney would have made the argument that was ultimately deemed meritorious in *Chase*." *Id.* at 382. The Court reviewed its prior decisions in *State v. Iverson*, 185 Or. App. 9 (2002); *State v. McKinzie*, 186 Or. App. 384 (2003); *State ex rel Juv. Dep't v. Sauer*, 189 Or. App. 78 (2003); and *State v. Leahy*, 190 Or. App. 147 (2003). *Id.* at 382-384. The Court concluded that, taken together, those cases established the following propositions that would have been known to reasonably competent criminal defense attorneys at the time of the petitioner's 2005 trial: (1) strict compliance with the 15-day notice requirement is required; (2) the state cannot satisfy its duty merely by providing discovery; (3) the importance of the hearsay evidence is not "good cause" to excuse the state's noncompliance; and (4) the sole remedy for noncompliance is exclusion of the evidence. *Id.* at 384-85.

Of particular importance to the instant proceeding, however, the Court held that its prior

cases did *not* address the *level* of particularity required by the rule:

> .... Although our cases in 2002 and 2003 had quoted the requirement of the rule that notice give "the particulars of the statement," the level of particularity that is required had not been at issue in any of those cases .... Nothing in those cases, therefore, would have clearly told petitioner's trial counsel that he could lodge a successful objection to the state's notice even though it had been provided on time, and even though he knew exactly what evidence the state intended to offer.

*Id.* at 385. Further, the Court of Appeals held that its 2011 decision in *Chase* broke new ground:

> .... [P]etitioner argues that the core "principles" of *Chase* "had been announced and expounded upon by the Court of Appeals well before trial in Petitioner's case. *Chase* broke no new ground." But it did. *No prior appellate decision had addressed . . . whether the state's OEC 803(18a)(b) notice, although timely, may still be insufficient based on vagueness. Thus, the 2011 holding in Chase would not have been known to a defense lawyer in 2005.*
>
> . . . .
>
> In short, given the state of the law, his own experience in that trial court, and the circumstances of the case, petitioner's trial attorney could have reasonably concluded that a motion or objection under OEC 803(18a)(b) would not only have failed but would have cost him credibility with the court, to the detriment of his client. Accordingly, we cannot conclude that every reasonable defense attorney would have objected to the admission of the hearsay evidence.

*Id.* at 386-87 (emphasis added).

## B.    The State's Pretrial Hearsay Notice

Approximately three months before Petitioner's trial, the prosecution filed its Notice of

Intention to Rely on Child Hearsay which provided:

> Comes now Jennifer Gaddis, Deputy District Attorney and hereby gives notice of the State's intention to rely on the following hearsay statements of a child concerning an act of abuse, as permitted by OEC 803(18a)(b).

> The State intends to use the statements made by [MO] . . . to

- Antoinette O'Keefe
- John Williams
- Julie Siepmann (Juliette's House)
- Mary Montesano (Juliette's House)

as described in the previously provided discovery by the State, and the Juliette's House reports ordered by the defense.

The State also intends to use the statements made by [FO] . . . to

- Antoinette O'Keefe
- John Williams
- Julie Siepmann (Juliette's House)
- Mary Montesano (Juliette's House)

as described in the previously provided discovery by the State, and the Juliette's House reports ordered by the defense.

Resp't Ex. 112. Petitioner's counsel made no objection to the particularity of the Notice, and the trial

court subsequently permitted the prosecution to offer testimony concerning MO's and FO's out-of-

court statements.

At Petitioner's subsequent PCR proceeding, he argued that the State's Notice "was clearly

in violation of *State v. Chase*, 240 Or. App. 541, 546-47 (2011), and subject to exclusion." Resp't

Ex. 108 at 3. Petitioner argued that had counsel objected prior to trial, the hearsay testimony would

have been excluded and "only the two alleged victims would have testified and their testimony alone

would not have risen to the level of proof beyond a reasonable doubt." *Id.* at 7.

In opposition, the State offered the affidavits of Petitioner's defense attorney and the

prosecutor. Petitioner's defense attorney explained her decision not to object to the Notice:

. . . [Petitioner] and I were not confused about the particular statements that the State intended to offer and the manner in which the statements would be introduced. The defense had obtained and reviewed all of the referenced reports, and was familiar with the statements that the State would seek to introduce. DDA Jennifer Gaddis and I had a good, professional working relationship, and she was available to answer any

13 - OPINION AND ORDER

questions I had about the State's intent. There were no surprises at trial in that regard. My experience has shown that the trial court would not have sustained my objection and excluded the statements. A general statement seemed adequate to me, as detailed in the discovery provided.

Resp't Ex. 150 at 11. Similarly, the prosecutor attested that the form and content of the Notice was "consistent with the State's practice at the time of [Petitioner's] trial" and "the trial court would not have sustained the objection to the notice and excluded statements." Resp't Ex. 149 at 2.

Petitioner, in contrast, offered the Declaration of an experienced defense attorney who opined that at the time of Petitioner's trial, "criminal defense attorneys involved in defending clients charged with sex crimes were aware of the objections an attorney must make to the OEC 803(18a)(b) notices, including . . . objections based upon the generalized statements in the notices." Resp't Ex. 133 at 3. The attorney also opined that given the knowledge of the defense bar at the time of trial, "there was absolutely no reason" for Petitioner's attorney not to object. *Id.* at 4.[3] Additionally, Petitioner offered the testimony of attorney Frank E. Stoller, who opined that at the time of Petitioner's trial, a defense attorney exercising reasonable professional judgment would have objected to the State's Notice. Resp't Ex. 152 at 173-76, 198, 200-01, 204-05.

The PCR Court held that trial counsel was not deficient in failing to object to the State's Notice given the applicable state law existing at the time of trial and defense counsel's knowledge of the hearsay statements at issue:

---

[3] In support of his opinion, the defense attorney relied on a 2009 criminal case in which he objected to the state's hearsay notice for lack of specificity. Resp't Ex. 133 at 3; *State v. Bradley*, 253 Or. App. 277, 280 (2012). The trial court overruled the objection, but the Oregon Court of Appeals reversed on appeal in 2012. Resp't Ex. 133 at 4. In concluding that the notice was deficient, the Oregon Court of Appeals referenced several decisions rendered before the defendant's trial, but ultimately relied on its 2011 decision in *Chase*. *Bradley*, 253 Or. App. at 282-83.

. . . . The notice only referred to discovery without specifying specific statements or witnesses. Attorney testified that she was not surprised by any of the statements or witnesses who were called. After the time of this trial, State vs. Chase and State vs. Woods were decided. *Before those cases it was not likely that a court would exclude [witness] testimony based on the lack of specificity of the notice without engaging in the type of analysis the court uses for discovery violations* — is there a less drastic remedy, is the defense surprised, prejudice, in need of additional time or witnesses to rebut or investigate etc. If the defense was not surprised, if it knew all of the statements, knew what witnesses would be called, it is not likely that the court would have barred the testimony. Attorney was not inadequate for not predicting the recent case decisions.

Resp't Ex. 153 at 2 (emphasis added).

## C.     Trial Counsel's Failure to Object

In the instant proceeding, Petitioner argues that reasonably competent counsel would have objected to the State's Notice because it "wholly failed to identify any hearsay statement with particularity." Pet'r's Br. in Supp. at 12. Petitioner argues that the Notice contained "general and vague terms that the statements it intended to offer were 'described in the previously provided discovery by the State, and the Juliette's House reports ordered by the defense.'" *Id.*, *quoting* Resp't Ex. 112. With respect to the relevance of state law at the time of trial, Petitioner argues that the meaning of OEC 803(18a)(b) is apparent on its face and did not require judicial interpretation. Pet'r's Sur-Reply (ECF No. 47) at 5; Pet'r's Br. in Supp. at 13. Further, Petitioner contends that the holding in *Hagberg* is "plainly distinguishable" and does not define what a reasonable attorney would have known at the time of his 2010 trial in light of the significant intervening decision in *State v. Olsen*, 220 Or. App. 85 (2008), as well as the Oregon Court of Appeals' prior decisions in *Leahy*, *Sauer*, *McKinzie*, and *Iverson*. Pet'r's Sur-Reply at 6.

This Court concludes that, in light of state law at the time of Petitioner's 2010 trial, the PCR Court's rejection of Petitioner's ineffective assistance claim is neither contrary to, nor an

15 - OPINION AND ORDER

unreasonable application of clearly established federal law. First, this Court rejects Petitioner's assertion that the level of particularity or detail required by OEC 803(18a)(b) is plain on its face and did not require judicial interpretation. On the contrary, as implicitly recognized by the Oregon Court of Appeals in *Hagberg,* whether the rule required the State to set forth the statements verbatim or provide some lesser detail is not apparent on the face of the rule. *See Hagberg*, 269 Or. App. at 385-86 (concluding that *Chase* was ground breaking, and its 2002-03 cases did not address the level of particularity required).

Further, this Court rejects Petitioner's assertion that *Olsen* is a significant intervening decision rendering *Hagberg* inapplicable to the question of whether trial counsel's failure to object fell below an objective standard of reasonableness. In *Olsen*, the State provided a hearsay notice containing no detail and simply provided that the state intended "to offer child hearsay evidence pursuant to OEC 803(18a) and (24) at the trial." 220 Or. App. at 89. On appeal, the State conceded that its notice did not comply with OEC 803(18a)(b). *Id.* The Oregon Court of Appeals agreed with the State's concession, quoted the language of OEC 803(18a)(b), and held that the notice "did not provide any details about the evidence the state sought to admit." *Id.* The Oregon Court of Appeals did not expound on the detail or particularity required by OEC 803(18a)(b), and did not discuss the rule's application when defense counsel is aware of the hearsay statements at issue.

Consequently, *Olsen* does not have the import Petitioner accords to it, and its cursory holding does not undermine the Oregon Court of Appeals ruling in *Hagberg* that prior to 2011 no "appellate decision had addressed the situation posed by petitioner's case, *viz.*, whether the state's OEC 803(18a)(b) notice, although timely, may still be insufficient based on vagueness." *Hagberg*, 269 Or. App. at 386. This Court defers to the Oregon Court of Appeals' construction of state law and its

conclusion that prior to its decision in *Chase* it had not addressed the level of detail required by the rule. *See Woods*, 764 F3d at 1138-39; *Romero*, 405 F. App'x at 211; *Lopez*, 408 F. App'x at 16. This Court reaches the same result based on its independent review of state law. *See Himes*, 336 F.3d at 854.

In sum, in light of the applicable state law at the time of Petitioner's 2010 trial and defense counsel's knowledge of the hearsay statements the State intended to offer, trial counsel's decision not to object to the Notice did not fall below an objective standard of reasonableness, and there is no reasonable probability that, had trial counsel made an objection, it would have been sustained and the outcome of the trial would have been different. *See Flournoy*, 681 F.3d at 1005-06; *Shackleford*, 234 F.3d at 1079-80. Trial counsel was not constitutionally deficient for failing to anticipate the Oregon Court of Appeals' 2011 decision in *Chase*. *See Sophanthavong*, 378 F.3d at 870; *Lowry*, 21 F.3d at 346. The fact that trial counsel may have had "nothing to lose" in making an objection does not dictate a contrary result. *See Knowles*, 556 U.S. at 122-23. The PCR Court's rejection of Petitioner's ineffective assistance of counsel claim is therefore not contrary to, nor an unreasonable application of, clearly established federal law.

## II.    Failure to Object to Witness Vouching

Under Oregon law, a witness is prohibited from commenting directly on whether another witness is testifying truthfully or whether another witness's prior statement was truthful. *State v. Beauvais*, 357 Or. 524, 543 (2015); *State v. Middleton*, 294 Or. 427, 435-38 (1983). Petitioner contends that trial counsel was ineffective for failing to object to improper vouching testimony.

Pet'r's Pet. at 6.[4] Petitioner argues that defense counsel's failure to object was not strategic and "[t]here was no valid reason whatsoever for counsel not to object to the repeated vouching." Pet'r's Br. in Supp. at 24, 26-28. Petitioner contends that he suffered prejudice because the vouching testimony would have been excluded and the testimony of the victims would have been insufficient to support his conviction on the charge involving MO. *Id.* at 29-31. Respondent argues that habeas relief is not warranted because defense counsel's failure to object was a valid strategic decision and did not prejudice Petitioner because it is presumed that the trial court disregarded any inadmissible evidence. Resp't Resp. at 11.

At the state PCR proceeding, Petitioner alleged that trial counsel was ineffective for failing to object to the following testimony because it commented upon the credibility of FO, MO, and Petitioner:

> • **Antoinette O'Keefe's** testimony that (1) she delayed calling the police to report the incident until she was sure FO and MO were being honest; (2) the investigating officer told her that he was convinced the abuse happened; (3) she did not confront Petitioner because she knew he would lie; (4) she did not report anything to the police until she was sure FO and MO were not stretching the truth; (5) she waited to call the police until she knew FO and MO were telling the truth; and (6) she waited to call authorities until FO and MO told her the same story and she watched FO go into a quiet state after she told her what happened. Resp't Ex. 107 at ¶ 14(E)(i)-(v) & (xi).
>
> • **Officer Williams'** testimony that (1) O'Keefe told him that she delayed reporting the abuse until she was 100 percent sure FO and MO were telling the truth; (2) MO's demeanor was consistent during his interview and she cried; (3) Petitioner tried to downplay the extreme nature of the incident; (4) he interviewed MO to see if there was enough credibility to her story to refer her to Juliette's House; (5) that

---

[4] This Court rejects Respondent's assertion that Petitioner violated Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts by failing to list all of the statements he contends trial counsel should have objected to as improper vouching.

O'Keefe told him she wanted to wait until she was 100 percent sure FO and MO were telling the truth before reporting it. *Id.* at ¶ 14(E)(vi)-(x).

• **Julie Siepmann's** testimony that (1) MO's demeanor was consistent throughout her interview; (2) her interview with FO was a "best case scenario" because she was able to specify on her body where she was touched; (3) another examiner reported that FO pointed to where she was touched; (4) she told FO and MO that it was important to tell the truth; (5) O'Keefe told her what MO and FO said about Petitioner; and (6) MO was missing details in her interview because of anxiety, her demeanor during the interview, and cognitive deficits. *Id.* at ¶ 14(E)(xii)-(xvii).

• **Jason Slade's** testimony that FO and MO revealed the abuse to him first. *Id.* at ¶ 14(E)(xviii).

The PCR Court held that trial counsel was not ineffective because many of the alleged instances were not improper vouching, and "*[s]ome* of the other instances were vouching, but were so insignificant that they would not have affected the outcome." Resp't Ex. 153 at 2 (emphasis added). The PCR Court held that the following testimony was *not* improper vouching: "that the child cried, that [Petitioner] downplayed the seriousness of the report, that the girls' demeanors were consistent throughout the interviews, that evaluators told girls to tell the truth, what [the] mother reported to the evaluators, that mother has cognitive deficits." *Id.* Petitioner does not challenge the PCR Court's conclusion that these statements are not vouching . Pet'r's Sur-Reply at 11. Accordingly, this Court addresses the remaining testimony.

## A.    Trial Counsel's Failure to Object to O'Keefe's and Williams' Testimony was Reasonable Trial Strategy

For the reasons set forth below, this Court concludes that Petitioner has failed to demonstrate that trial counsel was deficient in failing to object to the following testimony because it was reasonable trial strategy.

///

### • Antoinette O'Keefe

The majority of the challenged testimony by O'Keefe pertains to her daughters' disclosure of the sexual abuse and her delay in reporting the abuse to police. *See* Resp't Ex. 107 at ¶ 14(E)(i), (iv), (v) & (xi); Pet'r's Br. in Supp. at 23. In her affidavit to the PCR Court, defense counsel explained that she did not object to O'Keefe's testimony as improper vouching because the testimony supported Petitioner's defense that O'Keefe falsely accused him of sexual abuse after he sought repayment of a debt:

> Regarding ¶ 14(E)(i) . . . . Mr. Pearce's summary of Ms. O'Keefe's statement is a manipulation of what she actually said in testimony . . . . She did not testify that she waited until she was sure the girls were being honest, she instead said she did not report right away because she felt initially they were lying. Three weeks later, according to her, which was the time of the debt issue, she suddenly believed them and cut off contact. I did not want this information excluded. It was helpful and complemented Mr. Pearce's testimony that she had launched these allegations to avoid her debt to Mr. Pearce. Also it was helpful that she testified that after the first allegation she invited Mr. Pearce to dinner with the family and allowed contact to continue, until three weeks later, debt issue arises, then she believes the allegations, then all of a sudden stops contact.

> . . . .

> Regarding ¶ 14(E)(iv) [and] ¶ 14(E)(v) . . . I would provide the same response as I did to ¶ 14(E)(i). . . . Her testimony supported Mr. Pearce's testimony that she contacted police immediately after he called regarding repayment of the loan. . . .

> . . . .

> Regarding . . . ¶ 14(E)(xi), the testimony was not objectionable. It was not a comment on credibility, but was the explanation reported by Ms. O'Keefe for her delay in bringing the allegations to law enforcement.

Resp't Ex. 150 at 4-6.

Defense counsel's decision to not object to O'Keefe's testimony, because it supported Petitioner's defense that she did not report the alleged sexual abuse until after he sought repayment

of a debt, was reasonable trial strategy. Accordingly, defense counsel's failure to object does not fall below an objective standard of reasonableness.

### • Officer Williams

Petitioner contends that defense counsel should have objected to Williams' testimony recounting O'Keefe's explanation for her delayed reporting. Resp't Ex. 107 at ¶ 14(E)(vi) & (x); Pet'r's Br. in Supp. at 24-25. At the PCR proceeding, defense counsel reiterated her strategy to allow testimony concerning O'Keefe's delayed reporting because "[i]t was helpful and complemented Mr. Pearce's testimony that she had launched these allegations to avoid her debt to Mr. Pearce," and "contacted police immediately after he called regarding repayment of the loan. Resp't Ex. 150 at 4-5. As noted above, this was a reasonable trial strategy. Accordingly, defense counsel's failure to object to the testimony does not fall below an objective standard of reasonable.

### • Jason Slade

Petitioner alleges that defense counsel should have objected to the testimony of the victims' uncle, Jason Slade, that FO and MO first disclosed the alleged abuse to him and that it was so disturbing that he told O'Keefe and a retired Oregon Patrol Officer. Resp't Ex. 107 at ¶ 14(E)(xviii); Pet'r's Br. in Supp. at 26. Petitioner argues Slade's testimony was improper vouching because it suggested that the girls' disclosure was so convincing that he felt compelled to report them. Pet'r's Br. in Supp. at 26. Defense counsel explained her decision not to raise an objection to Slade's testimony as follows:

    . . . . [T]he brother of the mother of the alleged victims provided testimony that the girls reported the abuse to him at the time of the pizza party and that, when he relayed their disclosures to his sister (Ms. O'Keefe) it seemed to him that she was hearing of the allegations for the first time, which contradicted Ms. O'Keefe's testimony that she heard the allegations three weeks earlier from her daughters, did

21 - OPINION AND ORDER

not believe it and waited to see if they changed their story. The pizza party was the last time, if memory is correct, that Mr. Pearce saw the girls, and the mom did then report it to police a couple days later, which went along with Mr. Pearce's theory that she made allegations to avoid repaying the debt to Mr. Pearce, and in fact had not been sitting on the info for 3 weeks, all of which is consistent with Mr. Pearce's theory of the case.

Resp't Ex. 150 at 8.

Assuming that Slade's testimony can be construed as improper vouching, Defense counsel's strategy not to object to the testimony because it supported the defense's timeline of events was a reasonable strategy. Accordingly, counsel's failure to object to the testimony does not fall below an objective standard of reasonableness.

## B. Trial Counsel's Failure to Object to Remaining Testimony did not Result in Prejudice

For the reasons set forth below, this Court concludes that Petitioner has failed to demonstrate that, had trial counsel objected to the following testimony by O'Keefe, Williams, and Siepmann, there is a reasonable probability that the objections would have been sustained and the result of the trial would have been different.

The remaining testimony which Petitioner characterizes as improper vouching is Williams' and O'Keefe's testimony that Williams referred MO to Juliette's House after determining there was sufficient credibility to her story; and Siepmann's testimony that FO was able to demonstrate where she was touched, and why MO's interview lacked some details. *See* Resp. Ex. 107 at ¶ 14(E)(ii), (ix), (xiii), (xiv), & (xvii).[5]

---

[5] Petitioner does not argue how O'Keefe's testimony that she did not confront Petitioner about the abuse because she knew he would lie (*see* Resp't Ex. 107 at ¶ E(iii), constitutes improper vouching. *See* Pet'r's Br. in Supp. at 24 (arguing testimony was inadmissible because it (continued...)

22 - OPINION AND ORDER

This Court assumes, without deciding, that the foregoing testimony was improper vouching to the credibility of FO and MO. However, Petitioner has failed to demonstrate that, had trial counsel objected to the testimony, there is a reasonable probability that the result of the proceeding would have been different. As outlined by the trial judge when rendering his decision, the victims' testimony was credible and their pretrial disclosures of the abuse were reasonably consistent. In contrast, the trial court concluded that Petitioner's "explanation as to what he was doing down there makes no sense whatsoever." Resp't Ex. 104 at 123. Accordingly, and in light of all the admissible evidence presented at trial, Petitioner has failed to demonstrate that, had counsel objected to the testimony, there is a reasonable probability that the objection would have been sustained and the result of the trial would have been different. The PCR Court's rejection of Petitioner's ineffective assistance of counsel claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

///

///

///

///

///

///

///

---

⁵(...continued)
was improper character evidence under OEC 608(1)). In any event, defense counsel's failure to object to the testimony did not result in prejudice for the reasons set forth above.

## CONCLUSION

Based on the foregoing, this Court denies Petitioner's Petition for Writ of Habeas Corpus

(ECF No. 2). This Court grants a Certificate of Appealability on the issue of whether trial counsel

was ineffective for failing to object to the State's Notice of Intention to Rely on Child Hearsay. *See*

28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this  13th  day of April, 2017.

/s/ Garr M. King
Garr M. King
United States District Judge